IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES LIABILITY
INSURANCE COMPANY,

    Plaintiff,

v.                                                                          No. 06-2159 B/A

NTR, INC., d/b/a THE SPOT and
NATHAN T. ROSENGARTEN,

    Defendants.

_____

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
_____

    The Plaintiff, United States Liability Insurance Company ("USLIC"), brought this declaratory judgment action pursuant to 28 U.S.C. §§ 2201-02 and Rule 57, Fed. R. Civ. P., against the Defendants, NTR, Inc. d/b/a The Spot ("NTR") and Nathan T. Rosengarten ("Rosengarten"), seeking a determination that the insurance policy it issued to NTR was void ab initio based upon material misrepresentations in NTR's application for coverage.  Jurisdiction of this Court is predicated upon diversity of citizenship. (Compl. ¶ 5); see 28 U.S.C. § 1332.  Before the Court is the Plaintiff's motion for summary judgment.  The Defendants have responded, the Plaintiff has replied, and this motion is now appropriate for disposition.  For the reasons set forth below, the motion for summary judgment is GRANTED.

BACKGROUND

    The following facts are undisputed unless noted.  Rosengarten formed NTR in January 2000 "in order to open and operate a nightclub known as 'The Spot.'" (Pl.'s Statement of Undisputed

1

Material Facts in Supp. Mot. Summ. J. ¶ 1) ("Pl.'s Facts").[1] As president of NTR, he was responsible for decisions concerning insurance coverage. (Pl.'s Facts ¶ 4). The Defendant purchased insurance through Richard Levatino, an independent insurance agent, who helped the Defendant obtain liquor liability insurance. (Pl.'s Facts ¶ 5). Neither Levatino nor his firm, Menard Gates & Mathis, had any contractual relationship with USLIC or ability to bind or act on behalf of USLIC. (Pl.'s Facts ¶ 22).[2]

In February 2004, Levatino, using information provided to him by Rosengarten, prepared an unsigned "Application" and an unsigned "Warranty Application" in order to obtain for the

---

[1]Rosengarten has failed to comply with the Local Rules of this district in filing his response to the Plaintiff's statement of undisputed material facts. Local Rule 7.2 provides

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue.

L.R. 7.2(d)(3), Local Rules of the U.S. Dist. Court for the W.D. Tenn ("Local Rules"). The Defendant did not use "corresponding serial numbering" as mandated by the Rule. Neither did he expressly admit or deny any of the Plaintiff's twenty-two paragraphs of undisputed material facts. Rather, the Defendant filed, as an attachment to his response in opposition to USLIC's motion for summary judgment, his own "Statement of Disputed Material Facts." As Rosengarten has failed to comply with the requirements of the Local Rules and has not expressly admitted or denied the Plaintiff's material facts, the Court deems those facts as having been admitted.

[2]Subsequent to the filing of the original complaint by the Plaintiff, on September 22, 2006, NTR and Rosengarten brought a third-party action against Levatino and Menard, Gates and Mathis for negligence and breach of duty, claiming that the third-party Defendants should indemnify NTR and Rosengarten for all claims and costs asserted against the original Defendants in suits pending in the Circuit Court of Shelby County, Tennessee.

Defendants a quote for liquor liability insurance from TAPCO Underwriters. (Pl.'s Facts ¶¶ 6-7). After Levatino faxed a copy of these documents to TAPCO, TAPCO then transmitted the applications to USLIC, which based upon the information contained therein, agreed to issue a liability policy to NTR "provided that the 'Application' and 'Warranty Application' were signed by an authorized representative of 'The Spot.'" (Pl.'s Facts ¶¶ 9-10).

On March 10, 2004, Levatino met Rosengarten in order to obtain his signature on "the already filled out 'Application' and 'Warranty Application.'" (Pl.'s Facts ¶ 11). At this meeting, according to Levatino, Rosengarten signed both documents, which were then submitted to the Plaintiff. (Pl.'s Facts ¶ 12). Following the submission of the completed applications, USLIC issued to NTR the liquor liability insurance policy. (Pl.'s Facts ¶¶ 12, 14).

In the applications, Rosengarten represented that NTR "had [n]ever been fined or cited for violations of a law or ordinance related to the sale of alcohol." (Pl.'s Facts ¶ 16). In fact, however, NTR had previously been cited by the Tennessee Alcoholic Beverage Commission ("TABC") for forty-six separate violations concerning its sale of alcohol. (Pl.'s Facts ¶ 17).[3]

USLIC claims, through its underwriter, that it relies on the information provided in the applications "to assess the risk of loss" and determine "the premiums it will charge." (Pl.'s Facts ¶ 18 (citing Michael Craddock Aff. ¶ 14)).[4] According to Michael Craddock, an underwriter with

---

[3]Rosengarten does not deny that the representations in the applications about the lack of any violations/fines were incorrect. Rather, he disagreed that the fines and/or citations were warranted or asserted that they may have been disputed. See (Nathan Rosengarten Aff. at 55-70).

[4]USLIC has presented the affidavit of Michael Craddock in support of its motion for summary judgment. Mr. Craddock is "an underwriter with [USLIC] in its home office in Wayne, Pennsylvania." (Michael Craddock Aff. ¶ 1). Craddock's job responsibility at USLIC is "to evaluate the acceptability of insurance risks . . . from the standpoint of the exposure

the Plaintiff, NTR's misrepresentations about the absence of violations increased the risk of loss to USLIC. (Pl.'s Facts ¶ 19 (citing Craddock Aff. ¶¶ 14-15)). USLIC, through Craddock, see supra n.4, asserts that it would not have provided coverage to NTR had it been aware of the previous citations and fines issued by TABC. (Id.).

The Plaintiff filed its motion for summary judgment, accompanying memorandum, and statement of undisputed material facts on October 20, 2006. As part of his response to the motion filed on November 20, 2006, Rosengarten submitted his own affidavit in which he acknowledged signing a blank "Application" but denied signing the "Warranty Application." (Defs.' Resp. to Pl.'s Mot. Summ. J., ex. 1, Nathan Rosengarten Aff. at 3). Rosengarten further stated that the signature appearing on the "Warranty Application" was a forgery. (Rosengarten Aff. at 3).

In its reply, USLIC contends that Rosengarten's statements in his affidavit conflict with his prior deposition testimony and therefore should not be considered for purposes of resolving the summary judgment motion. At his deposition taken on August 24, 2006, the following exchange occurred with the Defendant providing the answers designated "(A)":

> Q: We were talking about your dealing with insurance. I believe you told me you dealt with all of the insurance matters. Let me show you a document, two (2) pages. It is an application for Insurance with United States Liability Insurance Group. Do you see that?
> A: Yeah.
> Q: If you will look at the second page of that at the bottom, is that your signature?
> A: Yes.
> Q: And it was signed on March 10, 2004, is that right?
> A: Yes.
> [The Application was then marked as exhibit number 2 to the deposition].

---

presented and the potential for risk of loss." (Craddock Aff. ¶ 2).

4

> Q: Mr. Rosengarten, let me pass you another document which we will mark as exhibit number 3 which appears to be the United States Liability Insurance Group document called a warranty application. Do you see that?
> A: Yeah.
> Q: And on the second page at the bottom is that your signature?
> A: Yes.
> Q: And what date did you sign that?
> A: March 10, 2004.
> [The Warranty Application was marked as exhibit number 3 to the deposition].

(Nathan Rosengarten Dep. at 39-40).

In this circuit, "[w]hen a motion for summary judgment has been filed, a party cannot create a factual issue by filing an affidavit which contradicts earlier testimony." Lanier v. Bryant, 332 F.3d 999, 1004 (6th Cir. 2003) (citing United States ex rel. Compton v. Midwest Specialties, Inc., 142 F.3d 296, 303 (6th Cir. 1998); Dotson v. United States Postal Serv., 977 F.2d 976, 978 (6th Cir. 1992)). As such, Rosengarten cannot in a later affidavit manufacture a question of fact about the genuineness of his signature or the date of the signature affirmed in his prior deposition testimony.[5] Id. Thus, the Court will not consider the conflicting statements in Rosengarten's affidavit for purposes of deciding the Plaintiff's motion.

## STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[5] The Court would also note that besides confirming his signature on the "Application" and "Warranty Application" in his deposition, Rosengarten admitted in his answer to the complaint that on March 10, 2004, he completed both the "Application" and "Warranty Application" as part of the application process for the liquor liability insurance. (Answer ¶ 2).

a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2552. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

As this case is before the Court based upon diversity of citizenship, this Court will apply the

law of the forum state, Tennessee.  See  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817 (1938); E.I. Du Pont de Nemours & Co. v. Okuley, 344 F.3d 578, 584 (6th Cir. 2003), cert. denied, 541 U.S. 1027, 124 S. Ct. 2071 (2004).  USLIC contends that notwithstanding Rosengarten's affidavit,  no genuine issue of material facts exists and that it is entitled to judgment as a matter of law based on the application of a Tennessee state statute.  Rosengarten responds that Levatino himself supplied the false information on the "Warranty Application,"[6] and that therefore, he made no misrepresentation of fact to USLIC in order to obtain insurance coverage.

Tennessee Code Annotated section 56-7-103 provides,

> No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

(Emphasis added).

The Tennessee Supreme Court has stated that "'[a]ny misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that increases the risk of loss within the meaning of the statute.'" Bland v. Allstate Ins. Co., 944 S.W.2d 372, 375 (Tenn. Ct. App. 1996) (quoting Broyles v. Ford Life Ins. Co., 594 S.W.2d 691, 693 (Tenn.1980)).  In this action, the uncontradicted facts establish that the Plaintiff would not have issued insurance coverage for the Defendants had it known about the numerous fines/citations not disclosed by Rosengarten.  In addition, USLIC's underwriter who made the decision to insure based

---

[6] As previously noted, Rosengarten also contends that the signature on the "Warranty Application" was a forgery.  See supra at 4-5.

7

upon the information presented stated that the omitted facts increased the potential risk of loss and affected the premiums it charged.

While not contesting the foregoing statement of law, Rosengarten cites Bland for the proposition that when a prospective insured signs an application "in blank" and the insurance agent later fills in the form with materially false information, the insurer cannot disavow the contract. Id. at 375-378. While Bland does indeed stand for this argument, Rosengarten misapprehends its application to the facts of his case. In Bland, the insurance agent in question was an agent of the Defendant, Allstate Insurance Company. This was the fact which controlled the outcome of the case:

> [T]he knowledge of an agent is imputed to his principal. Griffith Motors, Inc. v. Parker, 633 S.W.2d 319, 322 (Tenn. App. 1982); American General Life Ins. Co. v. Gilbert, 595 S.W.2d 83, 87 (Tenn. App. 1979). In addition, "an agent acting within the general scope of his apparent authority, though exceeding his authority, binds his principal." Industrial Life & Health Ins. Co. v. Trinkle, 185 Tenn. 434, 436, 206 S.W.2d 414, 415 (1947). Applying this principle, if Bland answered the questions truthfully which were asked by Featherstone, any misrepresentations which Featherstone made are Allstate's responsibility.

Id. at 376.

In this case, unlike Bland, the insurance agent, Levatino, did not have an agency relationship with USLIC. (Pl.'s Facts ¶ 22); see also (Craddock Aff. ¶ 16). This fact was not contested by the Defendants. Therefore, Bland affords the Defendants no relief from the application of Tennessee Code Annotated section 56-7-103.[7]

---

[7]Rosengarten's contention about signing blank applications is belied by the fact that substantially the same forms, pre-Defendant's signature, were faxed to the Plaintiff by Levatino on February 17, 2004. (Richard Levatino Aff. ¶ 3). It is undisputed they had been completed in all material respects except for the Defendant's signature. As previously noted, Rosengarten

Based upon the Court's decision not to consider the Defendant's affidavit, it is now undisputed that Rosengarten signed the "Application" and "Warranty Application," that the applications contained false statements of material fact, that these misrepresentations increased USLIC's risk of loss, and that USLIC would not have issued the NTR policy had it known the true circumstances of Rosengarten's prior violations and fines. As no genuine issue of material facts exists, USLIC is entitled to judgment as a matter of law pursuant to Tennessee Code Annotated section 56-7-103. Celotex, 477 U.S. at 322, 106 S. Ct. at 2552; see also Broyles, 594 S.W.2d at 693 ("[A]ny misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that 'increases the risk of loss' within the meaning [T.C.A. § 56-7-103].") (quoting Little v. Wash. Nat'l Ins. Co., 34 Tenn. App. 593, 241 S.W.2d 838, 840 (1951)).[8]

IT IS SO ORDERED this 16th day of May, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

confirmed under oath that the same completed two applications contained his signatures which were affixed on March 10, 2004. Thus, the Defendants' claim that Rosengarten executed one (or both) applications in blank is not supported by the record before the Court.

[8]The Court directed Defendants' counsel to submit any additional facts from Rosengarten's deposition to support his position in this case by May 14, 2007. As of the filing of this order, no supplemental references have been provided.