IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES LIABILITY
INSURANCE COMPANY,

     Plaintiff,

v.                                                                          No. 06-2159 B/A

NTR, INC., d/b/a THE SPOT and
NATHAN T. ROSENGARTEN,

     Defendants/Third-Party Plaintiffs,

v.

RICHARD LEVATINO and
MENARD, GATES, and MATHIS,
INC.

     Third-Party Defendants.

---

ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

---

The Plaintiff, United States Liability Insurance Company ("USLIC"), brought this declaratory judgment action pursuant to 28 U.S.C. §§ 2201-02 and Rule 57, Fed. R. Civ. P., against the Defendants, NTR, Inc. d/b/a The Spot ("NTR") and Nathan T. Rosengarten ("Rosengarten"), seeking a determination that the insurance policy it issued to NTR was void ab initio based upon material misrepresentations in NTR's application for coverage. Jurisdiction of this Court is predicated upon diversity of citizenship.  (Compl. ¶ 5); see 28 U.S.C. § 1332.  On September 22, 2006, the Defendants filed a third-party complaint against the Third-Party Defendants, Richard Levatino ("Levatino") and Menard, Gates, and Mathis,

1

Inc. ("MGM"), seeking a determination that Levatino and MGM must indemnify NTR and Rosengarten for any damages the Third-Party Plaintiffs incur as a result of claims currently pending against them in the Shelby County Circuit Court. The Third-Party claims are based on a theory that the Levatino and MGM breached a duty arising from an agency relationship with the Defendants.   Before the Court is the Third-Party Defendants' motion for summary judgment.  The Third-Party Plaintiffs have responded, and this motion is now appropriate for disposition.  For the reasons set forth below, the motion for summary judgment is GRANTED.

BACKGROUND

The following facts are undisputed unless noted.  Rosengarten formed NTR in January 2000 "in order to open and operate a nightclub known as 'The Spot.'" (Pl.'s Statement of Undisputed Material Facts in Supp. Mot. Summ. J. ¶ 1) ("Pl.'s Facts").  As president of NTR, he was responsible for decisions concerning insurance coverage. (Pl.'s Facts ¶ 4).  Rosengarten purchased insurance through Levatino, an independent insurance agent, who assisted the Third-Party Plaintiff in obtaining liquor liability insurance for his nightclub. (Pl.'s Facts ¶ 5).  Neither Levatino nor his firm, MGM, had any contractual relationship with USLIC or ability to bind or act on behalf of USLIC.  (Pl.'s Facts ¶ 22).

In February 2004, Levatino, using information provided to him by Rosengarten, prepared an unsigned "Application" and an unsigned "Warranty Application" in order to obtain for the Defendants/Third-Party Plaintiffs a quote for liquor liability insurance from TAPCO Underwriters. (Pl.'s Facts ¶¶ 6-7).  After Levatino faxed a copy of these documents to TAPCO, TAPCO then transmitted the applications to USLIC, which based upon the information contained therein, agreed to issue a liability policy to NTR "provided that the 'Application' and 'Warranty Application' were signed by an authorized representative of 'The Spot.'" (Pl.'s Facts ¶¶ 9-10).

2

On March 10, 2004, Levatino met Rosengarten in order to obtain his signature on "the already filled out 'Application' and 'Warranty Application.'" (Pl.'s Facts ¶ 11).  At this meeting, according to Levatino, Rosengarten signed both documents, which were then submitted to the Plaintiff.  (Pl.'s Facts ¶ 12).  Following the submission of the completed applications, USLIC issued to NTR the liquor liability insurance policy.  (Pl.'s Facts ¶¶ 12, 14).

In the applications, Rosengarten represented that NTR "had [n]ever been fined or cited for violations of a law or ordinance related to the sale of alcohol."  (Pl.'s Facts ¶ 16).  In fact, however, NTR had previously been cited by the Tennessee Alcoholic Beverage Commission ("TABC") for forty-six separate violations concerning its sale of alcohol.  (Pl.'s Facts ¶ 17).[1]

USLIC claims, through its underwriter, that it relies on the information provided in the applications "to assess the risk of loss" and determine "the premiums it will charge."  (Pl.'s Facts ¶ 18 (citing Michael Craddock Aff. ¶ 14)).[2]  According to Michael Craddock, an underwriter with the Plaintiff, NTR's misrepresentations about the absence of violations increased the risk of loss to USLIC.  (Pl.'s Facts ¶ 19 (citing Craddock Aff. ¶¶ 14-15)).  USLIC, through Craddock, asserts that it would not have provided coverage to NTR had it been aware of the previous citations and fines issued by TABC.  (Id.).

---

[1]Rosengarten does not deny that the representations in the applications about the lack of any violations/fines were incorrect.  Rather, he disagreed that the fines and/or citations were warranted or asserted that they may have been disputed.  See (Nathan Rosengarten Aff. at 55-70).

[2]USLIC presented the affidavit of Michael Craddock in support of its own motion for summary judgment which this Court granted on May 16, 2007.  Mr. Craddock is "an underwriter with [USLIC] in its home office in Wayne, Pennsylvania."  (Michael Craddock Aff. ¶ 1).  Craddock's job responsibility at USLIC is "to evaluate the acceptability of insurance risks . . . from the standpoint of the exposure presented and the potential for risk of loss."  (Craddock Aff. ¶ 2).

The Third-Party Plaintiffs only contest the fact that Rosengarten signed the "Warranty Application," claiming that although he executed the "Application" in blank, he never signed the "Warranty Application." (Third-Party Pls.' Statement of Disputed Material Facts in Resp. to Third-Party Defs.' Mot. Summ. J. ¶ 19). Rosengarten further maintained that the signature appearing on the "Warranty Application" was a forgery. (Rosengarten Aff. at 3).

In its order granting USLIC's motion for summary judgment, the Court did not consider Rosengarten's affidavit, which was found to contradict his prior sworn deposition testimony. In so holding, this Court observed

> In its reply, USLIC contends that Rosengarten's statements in his affidavit conflict with his prior deposition testimony and therefore should not be considered for purposes of resolving the summary judgment motion. At his deposition taken on August 24, 2006, the following exchange occurred with the Defendant providing the answers designated "(A)":
>
> Q: We were talking about your dealing with insurance. I believe you told me you dealt with all of the insurance matters. Let me show you a document, two (2) pages. It is an application for Insurance with United States Liability Insurance Group. Do you see that?
> A: Yeah.
> Q: If you will look at the second page of that at the bottom, is that your signature?
> A: Yes.
> Q: And it was signed on March 10, 2004, is that right?
> A: Yes.
> [The Application was then marked as exhibit number 2 to the deposition].
> Q: Mr. Rosengarten, let me pass you another document which we will mark as exhibit number 3 which appears to be the United States Liability Insurance Group document called a warranty application. Do you see that?
> A: Yeah.
> Q: And on the second page at the bottom is that your signature?

A:     Yes.
Q:     And what date did you sign that?
A:     March 10, 2004.
[The Warranty Application was marked as exhibit
number 3 to the deposition].

(Nathan Rosengarten Dep. at 39-40).

In this circuit, "[w]hen a motion for summary judgment
has been filed, a party cannot create a factual issue by filing an
affidavit which contradicts earlier testimony." Lanier v. Bryant,
332 F.3d 999, 1004 (6th Cir. 2003) (citing United States ex rel.
Compton v. Midwest Specialties, Inc., 142 F.3d 296, 303 (6th Cir.
1998); Dotson v. United States Postal Serv., 977 F.2d 976, 978
(6th Cir. 1992)). As such, Rosengarten cannot in a later affidavit
manufacture a question of fact about the genuineness of his
signature or the date of the signature affirmed in his prior
deposition testimony.[3]  Id.  Thus, the Court will not consider the
conflicting statements in Rosengarten's affidavit for purposes of
deciding the Plaintiff's motion.

(Order Granting Pl.'s Mot. Summ. J., May 16, 2007, at 4-5).  Likewise, in their response to the

Third-Party Defendants' motion for summary judgment, the Third-Party Plaintiffs rely upon

Nathan Rosengarten's affidavit to construct a disputed issue of fact.  As it determined in its

ruling on the Plaintiff's summary judgment motion, "the Court will not consider the conflicting

statements in Rosengarten's affidavit for purposes of deciding the [Third-Party Defendants']

motion."  (Id.).

STANDARD OF REVIEW

Rule 56( c) provides that a

judgment . . . shall be rendered forthwith if the pleadings,
depositions, answers to interrogatories, and admissions on file,

---

[3]The Court would also note that besides confirming his signature on the "Application"
and "Warranty Application" in his deposition, Rosengarten admitted in his answer to the
complaint that on March 10, 2004, he completed both the "Application" and "Warranty
Application" as part of the application process for the liquor liability insurance.  (Answer ¶ 2).

> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988).  In reviewing

a motion for summary judgment, the evidence must be viewed in the light most favorable to the

nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct.

1348, 1356 (1986).  When the motion is supported by documentary proof such as depositions and

affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some

"specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324, 106 S. Ct.

at 2552.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the

material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  These facts must

be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could

find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).  Summary judgment must

be entered "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.  In this circuit, "this requires the nonmoving party to

'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga

Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886

F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or

weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

As this case is predicated upon diversity of citizenship, the Court will apply the law of

the forum state, Tennessee. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817

(1938); E.I. Du Pont de Nemours & Co. v. Okuley, 344 F.3d 578, 584 (6th Cir. 2003), cert.

denied, 541 U.S. 1027, 124 S. Ct. 2071 (2004). The Third-Party Defendants claim they are

entitled to judgment as a matter of law because the Third-Party Plaintiffs have failed to establish

that MGM or Levatino breached any duty of care owed to NTR and Rosengarten.

In their response to the motion for summary judgment, the Third-Party Plaintiffs argue

that Rosengarten did not execute the Warranty Application and that Levatino supplied

incorrect information in both the "Application" and "Warranty Application." The response,

however, does not address the Third-Party Defendants' position that there was no breach of a

duty of care owed to the Third-Party Plaintiffs. Rather, the substance of the Third-Party

Plaintiffs' argument simply addresses the contentions made in USLIC's motion for summary

judgment. In their conclusion, the Third-Party Plaintiffs request that the Court declare as a

matter of law, that the insurance policy issued to NTR Inc., d/b/a The Spot, is binding on

USLIC. (Third-Party Pls.' Mem. in Resp. to Mot. Summ. J. at 8). In any event, the Court finds

that the Third-Party Defendants' motion for summary judgment is well taken.

The Third-Party Plaintiffs' claim is based entirely on their allegation that Nathan

Rosengarten did not sign the "Warranty Application," that he signed the "Application" but the form

was blank[4], and that the misrepresentations, if any, were supplied by Levatino, thereby breaching

---

[4]Rosengarten's contention about signing blank applications is belied by the fact that
substantially the same forms, pre-Defendant's signature, were faxed to the Plaintiff by Levatino
on February 17, 2004. (Richard Levatino Aff. ¶ 3). It is undisputed they had been completed in
all material respects except for the Defendant's signature. As previously noted, Rosengarten

a duty of care owed to NTR and Rosengarten.  This Court previously rejected these contentions,

finding

> it is now undisputed that Rosengarten signed the "Application" and "Warranty Application," that the applications contained false statements of material fact, that these misrepresentations increased USLIC's risk of loss, and that USLIC would not have issued the NTR policy had it known the true circumstances of Rosengarten's prior violations and fines.

(Order Granting Pl.'s Mot. Summ. J. at 8-9) (footnote omitted).  As the Court refused to accept

the Third-Party Plaintiffs' factual basis underlying their claims against the Third-Party

Defendants, the Third-Party Defendants' motion for summary judgment is also GRANTED.

See Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.

      IT IS SO ORDERED this 1st day of June, 2007.

                    s/  J. DANIEL BREEN
                    UNITED STATES DISTRICT JUDGE

---

confirmed under oath that the same completed two applications contained his signatures which were affixed on March 10, 2004.  Thus, the Third-Party Plaintiffs' assertion that Rosengarten executed one (or both) applications in blank is not supported by the record before the Court.